In the

# United States Court of Appeals

For the Seventh Circuit

_____

No. 24-1206

MARK PETERSEN,

*Plaintiff-Appellant,*

*v.*

STEFANIE PEDERSEN,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:22-cv-00684 — **William C. Griesbach**, *Judge.*

_____

ARGUED SEPTEMBER 25, 2024 — DECIDED JUNE 10, 2025

_____

Before SCUDDER, KIRSCH, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* Mark Petersen sued Deputy Stefanie Pedersen under 42 U.S.C. § 1983, alleging that she falsely arrested him for drunk driving and unlawfully drew his blood. The district court granted Deputy Pedersen's motion for summary judgment on both claims and also granted her qualified immunity. We affirm, concluding that probable cause supported the arrest, the blood draw was taken

pursuant to a valid search warrant, and, regardless, that Deputy Pedersen is entitled to qualified immunity.

## BACKGROUND

### I. Facts

The following facts are undisputed by the parties and corroborated by video footage. At the summary judgment stage, we state these facts as favorably to Mr. Petersen as the record permits. *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023).

On the evening of December 27, 2018, Deputy Stephanie Pedersen of the Winnebago County Sherriff's Office was dispatched to a reported car crash outside a home in rural Wisconsin. An unidentified caller reported hearing a crash, looking outside, and seeing a car immobilized in a residential driveway. While the caller neither witnessed the crash nor saw who was driving the car, they observed a man loitering near the car.

Deputy Pedersen arrived at the scene approximately fifteen minutes after the 911 call was placed. She immediately observed tire marks running through the residence's front yard and broken tree branches scattered on the ground. As she pulled into the driveway, her squad car stopped in front of the disabled car, where Mr. Petersen was hunched over, attempting to change its front-passenger tire. Five adults, either residents or guests at the home, stood nearby as Mr. Petersen, unsteady on his feet, nearly toppled over while torquing the lug nuts with a crowbar.

Deputy Pedersen ran the car's license plates and learned that it was registered to Mark Petersen. Mr. Petersen was no stranger to Deputy Pedersen or the local sheriff's office.

Generally, he had established a reputation for being uncooperative during law enforcement encounters. He had three prior charges for operating a vehicle while intoxicated (OWI), *see* WIS. STAT. § 346.63(1), which triggered a .002 g/100 mL blood alcohol concentration (BAC) restriction on his driver's license. Deputy Pedersen had arrested Mr. Petersen on a previous occasion and recognized him as the man changing the car's tire. Additionally, dispatch informed her that Mr. Petersen's driver's license and license plates were currently suspended.

After receiving this information, Deputy Pedersen stepped out of her car and approached Mr. Petersen. Immediately, he began wandering away from her. He first walked towards the back of his car, creating a buffer between him and Deputy Pedersen, and then suddenly rushed away from the car and through the residence's front yard, ignoring her repeated commands that he "Stop!" He did not make it far, however, because Deputy Pedersen quickly grabbed him by the arm.

Once caught, Mr. Petersen acknowledged Deputy Pedersen's presence for the first time, asking in a noticeably slurred voice, "you talkin' to me?" Deputy Pedersen confirmed that she was and asked him what happened that night. He responded, "I was just coming here to get my motor vehicle, what's going on with you?" She repeated her question, and he answered, "I said, my daughter, she's called me out here. Came out here to fix the tire. You guys know anything about that or are you all good?" After answering, he attempted to escape Deputy Pedersen's grip, but she took hold of his arm again and repeated her warning that he stop resisting.

Deputy Pedersen continued her questioning, asking how his car ended up in the driveway, to which Mr. Petersen slowly answered, "My … daughter's … down here." Deputy Pedersen probed where his daughter was (since she was not on the scene), and he saucily countered, "I don't know, where's your daughter?" When Deputy Pedersen pressed him on who was driving his car that night, he again blamed his daughter, "Trisha," and explained, "I don't drive anything. I took … the front road, like she'll drive me right here … like I don't drive. I don't drive anymore." Deputy Pedersen then turned to the bystanders and asked if Mr. Petersen was the only person they saw near the car, and they responded affirmatively. At this point, Deputy Pedersen handcuffed and formally arrested Mr. Petersen for drunk driving. Other officers had arrived by now and assisted in the arrest.

Several factors led to Deputy Pedersen's belief that she had probable cause to arrest Mr. Petersen for OWI. First, the tire tracks through the grass, downed branches, and flat tire suggested that the car had been pulled off the road in an erratic manner. Second, upon making contact with Mr. Petersen, she detected a strong odor of intoxicants and noticed his eyes were glassy and bloodshot. She also observed his slurred speech and lack of balance, swaying from side-to-side as he stood. Based on her specialized drug recognition training, these characteristics were consistent with intoxication. Third, based on her past familiarity with Mr. Petersen, she knew that he had been estranged from his daughter for several years, and thus was dubious of his version of events. She also knew that he had several previous OWI charges and that his license was currently suspended. Finally, the bystanders' confirmation that he was the only person they saw near the

vehicle gave her enough information, in her view, to make the arrest.

After handcuffing him, Deputy Pedersen conducted a search incident to arrest. In his coat pockets, she found car keys, lug nuts, and a container holding a leafy green substance that she suspected was marijuana. She and the supporting officers then placed Mr. Petersen in the back of the squad car and secured his seatbelt—overcoming his continued resistance and disregarding his provocations, including his quip: "Buckle it up, buttercup!" With Mr. Petersen restrained in the backseat, Deputy Pedersen continued her investigation, including driving to the local hospital to conduct a BAC test.

While en route to the hospital, despite the bystanders' statements that they saw no second person at the scene, Deputy Pedersen attempted to corroborate Mr. Petersen's account that his daughter was driving his car that evening. She asked him for his daughter's phone number, but he did not respond to her request. Persistent in her investigation, Deputy Pedersen then decided to call Mr. Petersen's mother, whom she had met during a prior encounter with him. Deputy Pedersen explained the situation to his mother and asked if she knew whether his daughter had driven his car. His mother was uncertain but said that it would be surprising, given the estrangement between him and his daughter. She also confirmed that his daughter's name was Aubrey, not Trisha, as Mr. Petersen had previously stated.

Approximately twenty minutes after leaving the crash site, they arrived at the hospital and parked outside. Deputy Pedersen asked Mr. Petersen if he would voluntarily consent to a blood draw, but he refused to answer. So she contacted

the on-call judge, Judge Karen L. Seifert, to request a search warrant for the BAC test. Under oath, Deputy Pedersen orally outlined the circumstances leading to Mr. Petersen's arrest, and, after a series of questions, Judge Seifert authorized the warrant. Equipped with a search warrant, Deputy Pedersen had hospital staff draw Mr. Petersen's blood, which showed he had a BAC of 0.213 g/100 mL—well above the legal limit of .08 g/100mL and his lower-restricted limit of .002 g/100mL.

## II.   Procedural History

The next day Mr. Petersen was criminally charged with one count of OWI – 4th Offense in the Circuit Court of Winnebago County. *See State v. Mark Petersen*, Case No. 18-CF-847 (Winnebago Cnty., Wis.). In those state court proceedings, Mr. Petersen moved to suppress the evidence from his BAC test, arguing that Deputy Pedersen lacked probable cause to arrest him for OWI. After a hearing and supplemental briefing, the state trial court granted Mr. Petersen's motion to suppress, finding that Deputy Pedersen lacked probable cause to arrest.[1] As a result, the State voluntarily dismissed its case against Mr. Petersen.

Then Mr. Petersen flipped the script. In June 2022, he sued the officers involved in his arrest and several governmental entities under 42 U.S.C. § 1983, alleging that they violated his Fourth Amendment rights. At the motion-to-dismiss stage, the district court reduced the case to two Fourth Amendment claims, both against Deputy Pedersen: one for false arrest and

---

[1] The summary judgment record does not reveal the state trial court's rationale for concluding that Deputy Pedersen lacked probable cause.

No. 24-1206                                                                 7

one for an unreasonable search based on the nonconsensual blood draw.

After discovery, Deputy Pedersen moved for summary judgment, arguing that (1) she had probable cause to arrest Mr. Petersen for OWI, (2) the blood draw was made pursuant to a valid search warrant, and (3) she was qualifiedly immune from Mr. Petersen's claims. The district court granted her motion in its entirety. Mr. Petersen now appeals, asserting that probable cause was lacking throughout the encounter because no one personally observed him driving.

## DISCUSSION

We review the district court's summary judgment ruling de novo and draw all reasonable factual inferences in Mr. Petersen's favor. *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022).

I.   **The Arrest**

A § 1983 claim for false arrest cannot succeed if the officer had probable cause to make the arrest. *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022). Probable cause to arrest exists "when a reasonable officer with all the knowledge of the on-scene officers would have believed that the suspect committed an offense defined by state law." *Jump v. Village of Shorewood*, 42 F.4th 782, 789 (7th Cir. 2022). "Probable cause does not require certainty"; instead, "it is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (cleaned up).

In a typical false-arrest case, the issue of probable cause will be decided by a jury after surviving summary judgment. *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013)

("Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause …."); *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014) ("The probable cause determination must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them."). "[B]ut if the underlying facts are undisputed, the court can make [the probable cause] decision on summary judgment." *Abbott*, 705 F.3d at 714. This is the atypical case in which the parties agree on the facts but dispute whether probable cause exists, making summary judgment (one way or the other) appropriate.

The elements of the predicate criminal offense frame our probable cause analysis. *Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023). Wisconsin's OWI statute states that "[n]o person may drive or operate a motor vehicle while … [u]nder the influence of an intoxicant … [or] under the influence of any other drug to a degree which renders him or her incapable of safely driving." WIS. STAT. § 346.63(1)(a).

Mr. Petersen does not dispute that he was intoxicated on the night in question. Instead, his claim hinges on the contention that Deputy Pedersen did not have probable cause to believe that he had "drive[n] or operate[d]" his car that night. He emphasizes that no one saw him operating the car and, on that basis, argues there was no reason to believe he was the person driving when it crashed into the yard.

Mr. Petersen's argument misunderstands the probable cause inquiry. The relevant question is not whether Deputy Pedersen was *certain* that Mr. Petersen was driving while intoxicated. Rather, it is whether, under a totality of the circumstances, it was *reasonable* for Deputy Pedersen to arrest because there was a "sufficient probability, not certainty" that

Mr. Petersen violated the OWI statute. *Hill v. California*, 401 U.S. 797, 804 (1971). On the record before us, Deputy Pedersen reasonably determined that there was a "substantial chance" that Mr. Petersen crashed into the yard while driving intoxicated, thus her arrest was supported by probable cause. *Muhammad v. Pearson*, 900 F.3d 898, 908 (7th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

The circumstantial evidence available contemporaneously to Deputy Pedersen strongly supports this conclusion. When she arrived at the scene, the details were clear: tire tracks ran through the front yard, broken branches littered the ground, and the tracks led to a driveway where Mr. Petersen was attempting to change a tire on his car. Several bystanders reported that he was the only person they saw near the vehicle that evening. Deputy Pedersen attempted to question Mr. Petersen, but he responded belligerently and exhibited clear signs of intoxication: he reeked of alcohol, his eyes were bloodshot, his speech was slurred, and he was unsteady on his feet. The timing of the arrest is also relevant; Deputy Pedersen arrived roughly fifteen minutes after receiving the dispatch call, making Mr. Petersen's intoxicated presence next to the car even more damning. Given the erratic tire tracks, the state of the scene, and Mr. Petersen's inebriation, the common-sense conclusion was that he had been driving the car in the crash Deputy Pedersen was dispatched to investigate. *See United States v. Burnside*, 588 F.3d 511, 518 (7th Cir. 2009) ("The officers, employing even a modicum of common sense, had probable cause to conclude that something illegal occurred.").

On top of this, Deputy Pedersen also relied on her prior knowledge and familiarity with Mr. Petersen. First, she knew that Mr. Petersen and his daughter were estranged. This

allowed her to discredit his alibi that it was his daughter, not him, who had crashed his car. Second, Deputy Pedersen knew from her prior interactions with Mr. Petersen and from the information she received from dispatch that he had several prior OWIs, a BAC restriction on his license, and a suspended driver's license. Of course, standing alone, this evidence could not establish probable cause for a drunk driving arrest "on [this] particular occasion." FED. R. EVID. 404(b)(1). But it was appropriately considered by Deputy Pedersen—along with the wealth of other information she had available—to establish probable cause under a totality of the circumstances analysis. *See Illinois v. Gates*, 462 U.S. 213, 244–45 (1983).

The sum of the evidence therefore readily established probable cause to arrest Mr. Petersen for drunk driving, and for that reason, his false arrest claim against Deputy Pedersen must fail. *Mwangangi*, 48 F.4th at 825.

This conclusion bleeds into our next, which is that, in any event, Deputy Pedersen is undoubtedly shielded from liability under qualified immunity. With respect to false arrest claims, the central question for qualified immunity is whether the officer had "arguable probable cause." *Id.* "Arguable probable cause exists when a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)) (cleaned up). Because Deputy Pedersen had *actual* probable cause to arrest Mr. Petersen, she necessarily acted with *arguable* probable cause. Thus, she is entitled to qualified immunity even if the

existence of actual probable cause were less clean-cut than it is here. *Abbott*, 705 F.3d at 718.

We end our discussion of Mr. Petersen's false arrest claim by briefly addressing a peculiar, albeit immaterial, aspect of this case's procedural history. Recall that the State dismissed criminal charges against Mr. Petersen in Wisconsin state court after the circuit court found that Deputy Pedersen lacked probable cause to arrest him. For the first time, Mr. Petersen argues on appeal that the state court's probable cause ruling should have preclusive effect in this case under the doctrine of collateral estoppel.

This argument runs into issues right out the gate. First, Mr. Petersen failed to raise this argument in the district court and thus has forfeited it on appeal. *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc). At any rate, even if we were to assume that the state court's probable cause ruling has preclusive effect (though we are doubtful), it would be practically irrelevant here where Deputy Pedersen is shielded by qualified immunity.[2] In other words, Deputy Pedersen would still be entitled to summary judgment on the false arrest claim

---

[2] Under Wisconsin's collateral estoppel rules, which would apply here, *see Allen v. McCurry*, 449 U.S. 90, 96 (1980), a party invoking preclusion must prove that the issue "was actually litigated and determined in the prior proceeding by a valid judgment[,]" and that "the application of issue preclusion would be fundamentally fair." *Dostal v. Strand*, 984 N.W.2d 382, 388 (Wis. 2023). The State voluntarily dismissed Mr. Petersen's criminal case, so there was no "final judgment on the merits," as collateral estoppel requires. *Teske v. Wilson Mut. Ins. Co.*, 928 N.W.2d 555, 561 (Wis. 2019); *see also Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2009) (holding that Indiana state court's suppression ruling did not have preclusive effect in § 1983 action because the issue was not decided by a "final judgment on the merits" due to government's voluntary dismissal).

because she had arguable probable cause to arrest. *See Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 656 (7th Cir. 2024) ("[A] determination of *actual* probable cause is separate and distinct from *arguable* probable cause."). For these reasons, Mr. Petersen's last-minute invocation of collateral estoppel falls flat.

## II. The Blood Draw

We turn now to Mr. Petersen's claim that the unconsented blood draw was an unreasonable search under the Fourth Amendment. Police may not take a blood sample from a nonconsenting individual unless they obtain a warrant or the search falls into one of the recognized exceptions to the warrant requirement. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). Here, Deputy Pedersen obtained a warrant. Nevertheless, Mr. Petersen contests the validity of the warrant by challenging the veracity of the sworn statements Deputy Pedersen made to Judge Seifert during the telephonic warrant application. He contends that Deputy Pedersen knowingly lied to Judge Seifert by telling her that she witnessed him driving. This claim is baseless.

"Searches undertaken pursuant to valid search warrants are presumptively valid[.]" *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To be valid, the warrant must "(1) be issued by a neutral and disinterested magistrate; (2) establish probable cause that the evidence sought in the warrant will aid in obtaining a conviction of a particular offense; and (3) describe with particularity the things to be seized and the place to be searched." *Id.* at 614. Challenging the veracity of an officer's sworn telephonic testimony supporting a warrant application is particularly "tough sledding" because such statements also carry

with them "a presumption of validity." *Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 596 (7th Cir. 2009) (citing *Franks*, 438 U.S. at 165, 171).

Thus, to survive summary judgment Mr. Petersen had to surface evidence that suggested Deputy Pedersen "knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer," and then show that those false statements were "necessary to the judicial officer's determination that probable cause existed." *Id.* (quoting *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)) (cleaned up).

The record contains no evidence suggesting that Deputy Pedersen made false statements to Judge Seifert. Deputy Pedersen's entire conversation with Judge Seifert was documented both through a circuit court transcript and her body-worn camera footage. These sources confirm that Deputy Pedersen did not claim anyone had seen Mr. Petersen driving his car that night. As it turns out, they show that Judge Seifert explicitly acknowledged the fact that no one had witnessed him driving. R. 34-4 at 6 ("THE COURT: And did you—You didn't witness any driving? DEPUTY PEDERSEN: Correct. THE COURT: [Did] the individuals that made the phone call? DEPUTY PEDERSEN: They heard the crash and they were coming outside. They said that they did not actually see it happen."). The transcript is clear. Mr. Petersen's accusation that Deputy Pedersen misled Judge Seifert is wrong.

Without any evidence that Deputy Pedersen misrepresented facts, we easily find that the blood draw was executed pursuant to a valid warrant. Mr. Petersen does not dispute that Judge Seifert was neutral and disinterested, nor does he contend that the warrant lacked particularity. Additionally,

we have already concluded that Deputy Pedersen had probable cause to believe Mr. Petersen was drunk driving, and no new information available to her after the arrest disrupts this conclusion. In fact, by the time she requested the warrant (after the arrest) she had an even stronger basis for probable cause, having found car keys in his coat pocket and confirmed, through his mother, that he was estranged from his daughter. Deputy Pedersen shared these additional facts with Judge Seifert. Accordingly, Judge Seifert reasonably concluded that the probable cause threshold was met, and that there was reason to believe that a blood draw would provide evidence of Mr. Petersen's intoxication.

We therefore find that the blood draw was obtained pursuant to a valid warrant and was lawful. *See Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018). Having concluded that Deputy Pedersen acted lawfully, we also agree with the district court that she is entitled to qualified immunity. *See Archer*, 870 F.3d at 614. (noting that an officer is "entitled to qualified immunity if she is acting pursuant to a warrant that was authorized by a judge, and her action is reasonable").

## CONCLUSION

Deputy Pedersen's decisions to arrest Mr. Petersen for drunk driving and to seek a BAC warrant were well supported by the information available to her and consistent with our Fourth Amendment jurisprudence. Accordingly, we AFFIRM the judgment of the district court.